UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

JEFFREY HAYES DANIEL,        )
      Plaintiff,           )
                             )
v.                           )      Case No. 4:10-cv-32
                           )      (MATTICE/CARTER)
MICHAEL J. ASTRUE        )
Commissioner of Social Security   )
                           )

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Administrative Record (Doc. 9) and defendant's Motion for Summary Judgment (Doc. 13).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

## Plaintiff's Age, Education, and Past Work Experience

Jeffrey Hayes Daniel is a 46 year old man with a high school education. (Tr. 19-20). He received vocational training as a millwright. He went through a four-year apprenticeship program through the union where he received the equivalent to an associate's degree specific to the occupation of millwrighting. (Tr. 20). He has a longstanding consistent work history as a

1

millwright for thirteen years until September 29, 2005, when he sustained an injury to his neck and shoulder. (Tr. 19, 21-22).

## Claim for Benefits

On January 3, 2007, Mr. Daniel filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 29, 2005. (Tr. 86-88). The claim was denied initially on April 11, 2007, (Tr. 42-44). He then filed a Request for Reconsideration on April 24, 2007 and was denied upon reconsideration on June 29, 2007. (Tr. 45, 47-48). Thereafter, Mr. Daniel filed a written request for hearing on July 27, 2007. (Tr. 49). On June 24, 2009, a video hearing was held. Mr. Daniel appeared in Cookeville, Tennessee, and was represented by an attorney, Barry Medley. Jo Ann Bullard, a vocational expert, also appeared at the hearing. (Tr. 16-36). Honorable Jack B. Williams, the presiding Administrative Law Judge, issued an unfavorable decision dated September 25, 2009 (Tr. 5-15). Mr. Daniel filed a Request for Review of Hearing Decision on November 24, 2009 and was denied by the Appeals Council on March 26, 2010. (Tr. 1-4, 82). Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20

2

C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative

3

decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since September 29, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: cervical degenerative disc disease with radiculopathy; tear of the left rotator cuff; hypertension (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work activity as defined in 20 CFR 404.1567(b) except the claimant is limited to simple work due to drowsiness from medications.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 18, 1963 and was 42 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2005 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 10-15).

## Issues Raised

I.  The ALJ erred in rejecting the opinion of treating physician Dr. Douglas Haynes.

II. The ALJ erred in discounting Mr. Daniel's complaints of disability due to his combined impairments.

## Relevant Facts

## Medical Evidence

Plaintiff's symptoms began in early August 2005 after lifting a part at work caused an immediate onset of neck pain, left-shoulder pain, and some pain into his left arm (Tr. 218).  On August 12, 2005, Plaintiff saw Dr. Linda Foster for complaints of left-shoulder strain (moderate in intensity) (Tr. 398).  On physical examination, Plaintiff's left shoulder was tender, he had decreased range of motion, and he could not lift his arm above shoulder level (Tr. 400).  Dr. Foster diagnosed Plaintiff with acute other affections of the shoulder region, not elsewhere classified (Tr. 400).  She prescribed physical therapy and Percocet (Tr. 400).  She also restricted Plaintiff from lifting, pushing, or pulling with his left arm and no lifting of his left arm above shoulder level (Tr. 400).  After nine physical therapy visits, Plaintiff's pain and function remained the same, but his strength and range of motion increased (Tr. 359).

5

A September 2005 MRI of Plaintiff's left shoulder showed a Grade I partial tear involving the articular surface of the distal supraspinatus tendon, acromioclavicular (AC) joint hypertrophy without impingement, and minor signal increase in the AC joint (Tr. 408).

Plaintiff visited Dr. Roger Zwemer on September 19, 2005, for continued complaints of left-shoulder pain, tenderness, and discomfort (Tr. 328). He was on regular duty at the time and his medications included Percocet, and Cortisone and Lidocaine shots (Tr. 328). On examination, Plaintiff had full shoulder range of motion but pain on abduction past 90 degrees; full flexion, good internal/external rotation, and minimal crackling and popping (Tr. 328). Later in September 2005, Dr. Zwemer noted that Plaintiff's shoulder MRI showed thinning of his rotator cuff (no tear), some fairly significant AC arthritis, and some mild degenerative changes in his socket (Tr. 328). Dr. Zwemer prescribed Vicoprofen and scheduled a neck MRI to rule out a cervical disc problem (Tr. 328).

Plaintiff saw Dr. Douglas Haynes on December 13, 2005 for continued neck pain (his shoulder pain had resolved). Plaintiff reported decreased sensation in his left index finger and thumb and he had limited neck motion, but examination findings were otherwise normal. X-rays showed some straightening in his neck with some degenerative disc disease (Tr. 327). Dr. Haynes suspected a herniated cervical disc and ordered an MRI (Tr. 327). A December 2005 neck MRI showed mild disc bulge and end plate spurring at C2-3 through C6-7, but no significant cord compression (Tr. 339, 460). Following the MRI, Dr. Haynes released Plaintiff to return to work with a 30-pound lifting limitation (Tr. 327).

In January 2006, Plaintiff reported continued pain in his left arm and numbness in his left thumb, some crepitance on motion of his neck, but no spasm, atrophy, or instability.

6

Electromyography (EMG) and nerve conduction studies suggested cervical radiculopathy, so Dr. Haynes referred Plaintiff for a neurosurgical evaluation (Tr. 326). Dr. Suneetha Nuthalapaty performed a needle EMG and sensory nerve conduction study on Plaintiff on January 19, 2006. The study showed evidence of mild radiculopathy involving the C7 and C8 nerve roots (cervical radiculopathy), but no evidence of median nerve neuropathy, ulnar neuropathy, or carpal tunnel syndrome (Tr. 326, 337-338).

On February 23, 2006, Dr. Michael Moran, a neurosurgeon, examined Plaintiff and concluded that he had chronic mechanical cervical pain but did not have any overwhelming cervical radicular symptoms, and that surgery would not help his chronic neck pain, as it was mainly soft-tissue neck pain. He opined that Plaintiff could return to work if he felt like it (Tr. 461).

Later in February 2006, Dr. Haynes noted slightly decreased sensation in the tip of Plaintiff's left thumb, but motion of the cervical spine was quite good, although mildly painful, and mildly painful left-shoulder motion (Tr. 326). On March 13, 2006, Dr. Haynes reported similar findings and opined Plaintiff could work with a 30-pound weight-lifting limit if such a job was available. He recommended therapy (Tr. 325).

On March 16, 2006, Plaintiff saw physical therapist Karen Pryor, who noted he had some decreased range of motion in his neck and shoulder and diminished muscle strength in his left elbow extensor (3/5), but good strength (4/5) in the remaining shoulder and elbow muscles (Tr. 230-31). Later in March 2006, Dr. Haynes continued Plaintiff on a 30-pound weight lifting limit and physical therapy (Tr. 325).

In April 2006, Plaintiff underwent a CT myelogram of his neck that showed marked

7

narrowing of the spinal canal and narrowing in the thoracic spine, but no significant disc herniation or nerve root compromise (Tr. 324, 331). On examination, Dr. Haynes found good motion with essentially no instability, atrophy, spasm, lymphedema, lymphadenopathy, varicosity, pressure sor or ulceration of either uper extremity (Tr. 324). A post-myelogram CT showed a minimal posterior bulge and other minimal changes (Tr. 332). Dr. Haynes recommended epidural steroid injections, which he noted would result in maximum medical improvement (Tr. 226, 324). Plaintiff received epidural steroid injections in April, May, and June 2006 (Tr. 224-25, 330, 333).

Plaintiff saw Dr. Haynes twice in July 2006 and reported that the steroid injections provided only temporary relief. In early July, Plaintiff reported some decreased sensation in his left thumb, but Dr. Haynes found no objective abnormalities. Dr. Haynes prescribed therapy three times a week, and anticipated Plaintiff would be able to return to work in four to six weeks. By late July, Plaintiff had yet to begin therapy, and Dr. Haynes' examination remained essentially normal (Tr. 323). On August 28, 2006, Plaintiff had been having numbness in his left arm. MRI scan of the cervical spine did not show any definite disc. Plaintiff reported getting some relief but for only about a day from 3 epidurals in the cervical region. Plaintiff was previously released to return to work with a 30 to 40 pound weight lifting limit. On September 11, 2006 Plaintiff was regaining feeling in his left thumb following therapy, and, other than pain with neck rotation, examination findings were normal. Dr. Hayes noted his release to work with a 50 pound weight lifting limit (Tr. 322).

In August, September, and October 2006, Plaintiff continued to have mildly limited and painful neck motion and decreased sensation in his left thumb, but examinations were otherwise

normal (Tr. 321-22).  Dr. Haynes opined that Plaintiff could lift (and occasionally lift in excess

of) 50 pounds and it would not damage his neck, although exceeding 50 pounds may cause

irritation.  Dr. Haynes noted that Plaintiff had reached maximum medical improvement (as of

October 11, 2006) and rated his partial-permanent disability at eighteen percent (Tr. 321).  Dr.

Haynes saw Plaintiff in December 2006 and his findings did not change.  He continued to have a

50 pound permanent weight lifting limit.  He recommended a TENS unit for pain control and

prescribed Soma and Hydrocodone (Tr. 320).

Also in December 2006, Plaintiff went to a general follow-up with Dr. G. Jackson Jacobs

for neck pain (Tr. 235).  Dr. Jacobs' examination showed some limitation in neck motion with

pain and mild crepitance, but pretty good range of motion in his left shoulder without pain (Tr.

235).  Dr. Jacobs prescribed Plaintiff Flexeril for his neck and recommended he go to a chronic

pain center for treatment of his neck pain (Tr. 235).

Plaintiff returned to see Dr. Haynes twice in February 2007 (Tr. 437).  In a February, 2,

2007 examination, Plaintiff had limited painful neck motion and diminished sensation in his left

thumb, but good arm motion and reflexes, and no instability, atrophy, or spasm.  Dr. Haynes

recommended chronic pain control and changed Plaintiff's prescription from Lortab to Percocet;

the pain medications helped somewhat.  Dr. Haynes explained to Plaintiff that he most likely had

a drug problem, and although he would "keep him comfortable," Dr. Haynes made Plaintiff agree

that he would only get his medications from Dr. Haynes and explained that they would not be

replaced if lost or misplaced (Tr. 437).

On March 12, 2007, Plaintiff saw Dr. Foster for neck and shoulder pain and to have her

fill out disability forms (Tr. 395).  On examination, Dr. Foster noted left-shoulder tenderness at

the AC joint and decreased range of motion; Plaintiff was unable to lift his arm above his shoulder.  Dr. Foster diagnosed Plaintiff with persistent cervicalgia (neck pain) (Tr. 397).

Plaintiff returned to Dr. Haynes on three occasions in March and April 2007 (Tr. 438-39).  He continued to wean Plaintiff off Percocet, although the combination of Percocet and Soma was reducing Plaintiff's pain to a bearable level (Tr. 438-39).  Dr. Haynes' examination findings were unchanged from February 2007 (Tr. 438-39).  Dr. Haynes noted that Plaintiff's medications were for legitimate pain, but warned that they were addicting and sedating (Tr. 438-39).  On April 24, 2007 Dr. Haynes completed a "Medical Statement Regarding Cervical Spine Disorders for Social Security Disability Claim" (Tr. 440-41).  Dr. Haynes placed checkmarks by the form entries indicating that Plaintiff had: neuro-anatomic distribution of pain, limitation of motion of the spine, sensory or reflex loss, inability to perform fine and gross movements (frequently dropped things), severe burning or painful dysesthesia (distortion of any sense), and the need to change position more than once every two hours.  He opined (by circling the appropriate response) that Plaintiff had moderate pain, and was able to work one hour per day, standing and/or sitting thirty minutes at one time, and lifting ten pounds occasionally and five pounds frequently.  He further opined that Plaintiff could occasionally rotate his head to the right or left and up or down (Tr. 441).

On April 9, 2007, Dr. James Moore, a non-examining State Agency Physician reviewed Plaintiff's medical records and opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, and could stand and/or walk for six hours, and sit for six hours each in an eight-hour day (Tr. 428).  He further opined that Plaintiff could frequently perform all postural movements and was limited to frequent overhead reaching with

his left arm (Tr. 429-30).

On June 12, 2007, Dr. Haynes noted that Plaintiff was doing some light yard work around the house (Tr. 473). His examination findings were essentially unchanged from his past examinations (Tr. 473). Dr. Haynes completed a form indicating Plaintiff had been permanently disabled due to cervical nerve root compression since September 2005 (Tr. 455). On June 22, 2007, Dr. Jacobs noted that Plaintiff had marked limitation in neck motion and numbness in his left thumb (Tr. 497). He acknowledged seeing a report of Dr. Haynes (Tr. 497).

Dr. Haynes continued to see Plaintiff to refill his pain medications and muscle relaxers in September and December 2007, and March 2008 (Tr. 474, 478). Other than Plaintiff reporting increased pain in December due to the change in weather, examination findings essentially remained unchanged. He felt chronic pain medication would be required (Tr. 474, 478). Plaintiff returned to Dr. Haynes in June 2008 and reported increased neck pain and symptoms resembling left carpal tunnel syndrome that was not showing up on nerve conduction studies (which Dr. Haynes noted occurred in ten percent of the cases) (Tr. 478, 480). In late June 2008, Dr. Haynes noted that Plaintiff had mildly limited neck motion and pain, and "subjectively some decreased sensation in the index finger, long finger, and thumb on the left," with no other changes from previous exams (Tr. 480).

Dr. Moran examined Plaintiff on July 24, 2008, and noted that he had tenderness to palpation in his neck, appeared to be in mild distress but his strength was good on the left (4/5). He did not detect any focal neurological deficits, and all other testing was normal (Tr. 465). Dr. Moran ordered an up-to-date MRI to see if Plaintiff's disc protrusion had worsened or there was a neural element compression that was not previously identified (Tr. 465). The MRI showed a

right posterolateral three to four millimeter disc protrusion narrowing the lateral recess on the right (which appeared new when correlated with the December 2005 study) and other minor changes that were similar to the December 2005 study (Tr. 466). Dr. Moran characterized the MRI results as showing a "very small, right-sided disk protrusion at C5-6 but nothing to account for his left arm symptoms." On examination, Dr. Moran noted that Plaintiff had decreased sensation in the C6 dermatome, but had no obvious motor deficit or long tract findings; and his cervical examination was relatively unremarkable. Dr. Moran did not think Plaintiff's condition warranted surgery, but recommended a CT myelogram and some flexion/extension x-rays to see if anything could be done to help him in light of his progressing symptoms (Tr. 467). Plaintiff underwent a cervical myelogram on October 15, 2008, that showed mild changes but no significant nerve-root compromise (Tr. 468-69). Dr. Moran concluded that there was "nothing on either the myelogram or the CT followup which suggested nerve root impingement that would account for [Plaintiff's] left arm pain;" he recommend that Plaintiff see a neurologist (Tr. 470).

In November 2008, Dr. Haynes noted that Plaintiff had limited motion with pain on left lateral flexion of his neck and tenderness in his neck, but no atrophy, good sensation, no tenderness to palpation in his arm, and good pulse and motion in his elbow and shoulder (Tr. 485). Dr. Haynes' examination in February 2009 showed little change; Dr. Haynes recommended repeated epidural injections (Tr. 507). In March 2009, Dr. Haynes again noted that Plaintiff had limited and painful neck motion and decreased sensation in some of the fingers in his left hand, but the examination was otherwise normal (Tr. 509). In April and May 2009, Plaintiff reported increased pain, but Dr. Haynes' examination results were essentially unchanged from previous exams (Tr. 523-24). Dr. Haynes noted that the nerve conduction studies from Dr.

Yesil showed a cervical radiculopathy with no evidence of carpal tunnel syndrome or ulnar nerve compression (Tr. 524). In a letter dated May 29, 2009, Dr. Haynes indicated that Plaintiff was "not able to perform any manual labor," which he thought was permanent (Tr. 527).

Hearing Testimony

A.      Plaintiff's Testimony

Mr. Daniels testified that he was injured while working as a subcontractor for Bridgestone Tire Plant in September 2005. At that time, he injured his neck and shoulder. (Tr. 23). He received treatment from Dr. Haynes, neurosurgeons, and a neurologist for his injury. He did not have surgery. (Tr. 24). He was in daily pain due to his injury and had been treated with a TENS unit. (Tr. 24). He also underwent physical therapy. He takes four to five Percocets a day and two Soma for his pain. Side effects from the medications include confusion, tiredness, and some dizziness if he stood up too fast. His neck pain radiates into his shoulders and he experienced numbness in his left fingers and left hand. (Tr. 25). He stated that he had pain in his left shoulder on a daily basis. (Tr. 26). He rated his combined pain as moderately severe and constant. (Tr. 26). He stated his pain was a seven or eight on a scale of zero to ten with medications. He has problems dropping things with his hands at times. His pain interferes with his sleep resulting in fatigue and tiredness. (Tr. 27). He has difficulty lifting a gallon of milk or a ten pound bag of potatoes. (Tr. 28). He testified that he attempts to mow the yard on a riding lawn mower. (Tr.28). He has to stop very frequently to rest. He tries to help out with the housework as well. (Tr. 29). Since he stopped working, he has lost interest in activities. (Tr. 30). He no longer participates in hobbies. (Tr. 29). He gained twenty to thirty pounds since his injury. (Tr. 30). His ability to concentrate and his memory have been affected by his injury. He

13

smokes a cigar and drinks alcohol occasionally. (Tr. 29). He experiences crying spells, excessive sadness, decreased energy level, difficulty sleeping, difficulty concentrating and feelings of guilt as a result of his injury. (Tr. 30-31).

B.      Vocational Expert's Testimony

The vocational expert testified Plaintiff has past relevant work as a millwright which is classified as heavy and skilled. Due to his severe impairments, he is unable to perform the demands of his past relevant work as they exceed the limitations of his residual functional capacity. The vocational expert also testified that such limitations preclude performance of his past relevant work. She testified that if Dr. Haynes' assessments were correct, Plaintiff could perform no work. The Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative (unskilled and light) occupations such as parking lot attendant (1,200 jobs in the region and 98,000 jobs in the nation); laundry folder (16,000 jobs in the region and 191,300 jobs in the nation); and textile checker (2,600 jobs in the region and 98,300 jobs in the nation). The vocational expert claimed the relevant region as the State of Tennessee. However, if he had severe pain and had to take extra breaks to rest he would be unable to perform these occupations. (Tr. 32-36).

Analysis

Plaintiff argues the ALJ erred: 1) in rejecting the opinion of treating physician Dr. Douglas Haynes and 2) in discounting Plaintiff's complaints of disability due to his combined impairments.

14

The ALJ found Plaintiff was significantly limited due to his impairments, but was not disabled because he could perform a range of light, simple work (Tr. 11). I agree with the Commissioner that the medical source opinions and the diagnostic and clinical test results support the ALJ's findings regarding the nature and severity of Plaintiff's limitations. The ALJ considered Plaintiff's allegations of disabling symptoms and limitations, but found they were less than credible and explained his analysis. I conclude the ALJ's residual functional capacity finding accommodated the limitations supported by the credible evidence in the record.

The Treating Physician Rule:

Plaintiff argues the ALJ did not accord proper weight to Dr. Haynes' opinion that Plaintiff could work one hour per day and lift only up to ten pounds (Doc. 10, Plaintiff's Brief at 14-15). In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine plaintiffs only once. *See Kirk v. Secretary of Health and Human Servs.,* 667 F.2d 524, 526 (6th Cir. 1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In fact, pursuant to agency regulations, if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of [a plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §404.1527(d)(2) (1997). However, the ALJ is not always bound to accept the treating physician's opinion.

The opinions of treating physicians are to be given great weight only if they are supported by sufficient clinical evidence and are consistent with the evidence. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also*, *Hardaway v. Secretary of Health and*

*Human Servs.*, 823 F.2d 922 , 927 (6ᵗʰ Cir. 1987) (per curiam) (the Commissioner is not bound by a treating physician's opinion if there is substantial evidence to the contrary).   Although an ALJ is required to consider medical source opinions along with the other relevant evidence to arrive at an ultimate residual functional capacity finding, the determination of disability is ultimately the prerogative of the ALJ—not the treating physician.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating source's medical opinion is entitled to controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2), *quoted in Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

If the ALJ does not give controlling weight to a treating physician's medical opinion, the ALJ should apply the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) to determine how much weight to give the opinion, and provide "good reasons" for the weight given to the opinion.  20 C.F.R. § 404.1527(d)(2); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for h[is] rejection.").

In this case, a treating physician, Dr. Haynes, gave an opinion which if accepted would be disabling.  The ALJ declined to afford controlling or significant weight to Dr. Haynes' opinion because Dr. Haynes' opinion was "inconsistent with other substantial evidence of record" (Tr. 13).  *See* 20 C.F.R. § 404.1527(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

16

Support for this conclusion is found in the record which contains diagnostic studies of Plaintiff's left shoulder which showed some significant arthritis in the AC joint, but otherwise showed only thinning of the rotator cuff and mild degenerative changes (Tr. 328, 408). Studies of Plaintiff's neck showed, at most, a mild disc bulge and minimal degenerative changes, but no significant nerve-root compromise (Tr. 324, 327, 331-32, 339, 460, 466-70). Dr. Moran concluded as late as October 2008 that Plaintiff's diagnostic studies showed nothing to account for his left-arm symptoms, including pain (Tr. 467, 470). EMG and nerve-conduction studies showed mild radiculopathy, but no evidence of median nerve neuropathy, ulnar neuropathy, or carpal tunnel syndrome (Tr. 326, 337-38, 524).

Clinical findings, including those of Dr. Haynes, suggested only minimal limitations. Dr. Haynes noted that Plaintiff's shoulder pain had resolved by December 2005 (Tr. 327). The only consistent abnormal examination findings in the record were Plaintiff's limited neck motion and decreased left-thumb sensation (and, at times, decreased sensation in other fingers in his left hand) (Tr. 230-31, 235, 320-24, 326-28, 397, 437-39, 465, 473-74, 478, 480, 485, 497, 507, 509, 523-24). However, other than in March 2006, when Plaintiff's left-elbow-extensor strength was reduced (3/5), he had no atrophy and good strength throughout the relevant period (*Id.*). Plaintiff's decreased sensation did not impede his motor function (Tr. 467).

Based on these relatively insignificant examination findings, Dr. Haynes previously opined on at least five occasions that Plaintiff could return to work with a 30 to 50-pound weight-lifting limitation (Tr. 320, 321, 325, 327). Dr. Moran also opined in February 2006 that Plaintiff could return to work if he felt like it (Tr. 461). Those facts are inconsistent with the disabling opinion of Dr. Haynes.

17

Finally, Dr. Moore, a non examining State Agency Physician, reviewed the medical evidence in April 2007 and opined Plaintiff could perform medium work[1] (Tr. 428-30). The Social Security regulations and rulings expressly recognize consultants, such as Dr. Moore, as "highly qualified physicians and psychologists who are also experts in Social Security disability evaluations." *See* 20 C.F.R. § 404.1527(f)(2)(i); Social Security Ruling (SSR) 96-6p.

Despite the clinical and diagnostic evidence and medical source opinion to the contrary, including his own prior lifting limits, Dr. Haynes opined in April 2007 that Plaintiff was limited to working no more than one hour per day and lifting no more than ten pounds (Tr. 441). An ALJ is permitted to reject a doctor's opinion where it changed without support. *See Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) ("[T]he ALJ [reasonably found] . . . that others of Dr. Templin's many medical assessments of Combs were inconsistent with this assessment, and that Dr. Templin was therefore less than credible."); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of HHS*, 964 F.2d 524, 528 (6th Cir. 1992)) (ALJs are "not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

Examination findings remained generally the same throughout the relevant time period. In December 2005, only three months after Plaintiff's alleged onset date of disability, Dr. Haynes opined that Plaintiff was able to return to work with a 30-pound weight-lifting restriction (Tr. 327). At two examinations in March 2006, Dr. Haynes reiterated that Plaintiff could return to

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

18

work with a 30-pound weight-lifting restriction if such a job was available (Tr. 325). In October 2006, Dr. Haynes even lessened his restrictions to allow Plaintiff to lift 50 pounds (and occasionally more), stating that it would not damage his neck (Tr. 321). He opined that Plaintiff had an "18% whole body permanent partial impairment," but reiterated in December 2006 that Plaintiff's "partial impairment" still allowed him to lift up to 50 pounds (Tr. 320). Because Dr. Haynes' opinion limiting Plaintiff to working one hour per day and lifting only ten pounds was inconsistent with other substantial evidence in the record and his opinion represented a significant change from his earlier opinions without support from the record, I agree with the Commissioner that the ALJ had a reasonable basis for assigning it little weight. The ALJ's rejection of Dr. Haynes' opinion must be upheld because it is supported by substantial evidence. Here the record contained the opinion of plaintiff's treating physician, which conflicted with his earlier opinions and the opinion of Dr. Moran and a State Agency Physician, Dr. Moore. The ALJ, who stands at the end of the process, has the obligation to consider the entire record evidence and, with the advantage of seeing the entire record including the hearing testimony, make the ultimate decision concerning disability. It is the province of the Commissioner to weigh the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("The trier of fact has the duty to resolve [the medical evidence] conflict"). I conclude that the ALJ has done so and there is substantial evidence to support his conclusion.

Combination of Impairments:

Plaintiff also asserts the ALJ erred in finding Plaintiff's reports of pain not fully credible, arguing that the ALJ "gave no reason for rejecting the complaints of pain other than reciting the medical record." (Doc 10, Plaintiff's Brief at 15-16). However, an ALJ's credibility

determination should be given great weight. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight . . . ."); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). In this case, the medical record cited by the ALJ showed that the objective medical evidence did not support Plaintiff's reports of disabling pain; a lack of objective medical evidence supporting subjective complaints of pain is a substantial factor to be considered by the ALJ. *See* 20 C.F.R. § 404.1529(c)(2). I conclude this to be a close case. Clearly, there is evidence in this record that supports a finding of disability, specifically the opinion of the treating physician in the form he completed. There are inconsistencies however in the assessments in the repeated assessments of 30 to 50 pound lifting limits. Further, there is evidence on the other side, the opinion of the non-examining State Agency Physician.

The ALJ did not limit his analysis to the objective medical evidence or Plaintiff's subjective complaints. He considered the entire record. Plaintiff's statements as to "pain or other symptoms will not alone establish that [he was] disabled . . . ." 20 C.F.R. § 404.1529(a). The ALJ noted Plaintiff's pain medication and muscle relaxants seemed to be helping (Tr. 12, 26-27, 323, 437-39), and their only side effect was drowsiness, which the ALJ accommodated by limiting Plaintiff to simple work (Tr. 11). The ALJ also noted Plaintiff was able to drive and perform a generally good range of daily activities, including yard work and house work (Tr. 13, 28-29, 473). Due to the contradictions among the medical reports related to Plaintiff's lifting capacity, the relatively mild objective medical findings, Plaintiff's testimony, and the other

20

evidence in the record including the opinion of the State Agency Physician, I conclude the ALJ

had a reasonable basis to discount Plaintiff's credibility and adequately considered the

combination of Plaintiff's impairments and accommodated those impairments by finding him

capable of performing a range of simple light work .

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the

conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be

AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 13) be

GRANTED, and plaintiff's Motion for Judgment on the Administrative Record (Doc. 9) be

DENIED.[2]


*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).